```
                   UNITED  STATES  DISTRICT  COURT
                      EASTERN DISTRICT OF LOUISIANA

LEROY CARMOUCHE, JR.                                    CIVIL ACTION

versus                                                  NO. 05-0410

THURMAN COOLEY, ET AL                                   SECTION: E/1
```

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW

This lawsuit arose out of a minor vehicular collision that occurred on July 3, 2004. Mr. Carmouche filed suit on February 15, 2005. A bench trial was held on May 18, 2006. At the close of the trial, the Court read its preliminary findings of fact and conclusions of law into the record. At that time, the Court rendered a verdict on liability in favor of Mr. Carmouche, and took the issue of quantum under submission. The parties filed post-trial memoranda on the quantum issue.

The Court, having carefully considered the pleadings, depositions, post-trial memoranda, the testimony and evidence presented at trial, and the record, and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, hereby enters the following findings of fact and conclusions of law. To the extent that any findings of fact constitute a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusions of law constitute a finding of fact, the Court hereby adopts it as such.

1.   A minimal impact collision occurred when Mr. Cooley's mail truck left its lane of traffic and partially entered the oncoming traffic lane.  The lower bar of left side mirror of Mr. Cooley's United States Postal Service truck struck the top of the left side mirror of Mr. Carmouche's van.

2.   Mr. Cooley, and the U.S. Government pursuant to *respondeat superior,* caused the collision, and are liable for the damages suffered by Mr. Carmouche.

3.   As a result of the side swipe, Mr. Carmouche struck his left knee on either the steering column or steering wheel of his van.

4. The Court considered the testimony (by deposition) of Mr. Carmouche's treating physician, Dr. S. Daniel Selzer, (Plaintiff's Ex. 6) and the radiologist who performed an MRI on his knee, Dr. Daniel H. Johnson (Defendant's Ex. 10).  The Court finds that the impact caused a previously asymptomatic condition, a cleavage tear of the medial meniscus of the left knee and bone spurring, to become symptomatic, causing swelling, fluid on the knee, and pain.

5.   Mr. Carmouche will have a permanent 5% disability which will not prevent him from doing the same job he was doing at the time of the collision.

6.   The damage to Mr. Carmouche's van amounts to $243.00.

Plaintiff's Ex. 2.

7. Mr. Carmouche testified that he may have lost two or three days of work as a result of the collision. Defendants did not contradict Mr. Carmouche's assertion in his pleadings that his rate of pay was $400.00 per week. Assuming that rate of pay was based on a five day work week, the Court finds that Mr. Carmouche is entitled to $160.00 for two days of lost wages.

8. Mr. Carmouche's medical expenses to date are:

```
Dr. Seltzer (treating physician):          $625.00
Davidson & Lorusso (physical therapy):     $560.00
Clearview Medical Imaging (MRI):           $775.00
Methodist Hospital (pre-op costs):          $880.74
Total:                                   $2,840.74
```

9. "In order to recover future medical benefits, Plaintiff must prove that these expenses will be necessary and inevitable." Aquillard v. Meiners, 857 So.2d 1034, 1036 (La.App. 5 Cir. 9/16/03)(citations omitted). Dr. Selzer recommended surgery to repair the tear, and testified that the torn medial meniscus would not heal without the surgery. Mr. Carmouche introduced evidence that the cost of recommended arthroscopic surgery of his knee to repair the medial meniscus tear would be approximately $11,000.00. Plaintiff's Ex. 5. The Court previously concluded that Mr. Carmouche's torn medial meniscus and bone spurring was a pre-

existing condition for which the Defendant was not liable. Moreover, Mr. Carmouche was scheduled for surgery in mid-September of 2004, when the pre-operative examination revealed a heart abnormality and the surgery was cancelled. Shortly thereafter, Mr. Carmouche was incarcerated in LaSalle Parish, where he will remain until at least late 2007. While Mr. Carmouche testified at trial that he intended to undergo the surgery upon his release, that is not sufficient to warrant an award of damages for future surgery, particularly to repair a condition that pre-existed the collision at issue here.

10. "Where a defendant's negligent action aggravates a preexisting injury or condition, he must compensate the victim for the full extent of his aggravation." <u>Touchard v. Slemco Electric Foundation</u>, 769 So.2d 1200, 1204, 1999-3577 (La. 10/17/00), *citing* <u>Perniciaro v. Brinch</u>, 384 So.2d 392 (La. 1980); <u>Aquillard</u>, at 1036. Mr. Carmouche first saw Dr. Selzer on August 12, 2004, over a week after the collision. He was treated conservatively, with prescription pain relievers and attended eight physical therapy sessions between July 16 and August 16, 2004. His physical therapy consisted of moist heat, ultrasound, massage and exercise. Plaintiff's Ex. 7.

-4-

Dr. Selzer last saw Mr. Carmouche on September 13, 2004, shortly before he was incarcerated. On September 14, 2005, Mr. Carmouche saw a nurse at LaSalle Correctional Facility, who reported that he had "minimal swelling" and pain in his knee, and he was instructed to report any increased pain or swelling. Plaintiff's Ex. 10. There is no indication that any medication was provided at that time, or that he has had any further treatment.

The Court reviewed recent general damages awards, within the last five years, in State courts for damages similar to those suffered by Mr. Carmouche as a result of the collision: aggravation of a prior knee injury, swelling, fluid on the knee, pain, and stiffness after standing for a period of time. The results are as follows:

In <u>Conerly v. State</u>, 858 So.2d 636 (La.App. 1 Cir. 6/27/03), a prisoner slipped and fell in the dining area. He had undergone reconstructive knee surgery three to four months prior to the accident. He testified that his knee popped and gave way when he slipped on spilled Kool-Aid, and that he experienced pain throughout the night and experienced swelling for an extended period of time, even after receiving hospital treatment. The appellate court affirmed the trial court's award of $15,000.00 in

general damages.  In Sweeney v. GEICO Indem. Co., 855 so.2d 826 (La.App. 2 Cir. 9/21/03), plaintiff was injured in a rear-end collision.  He had suffered a "significant prior injury" to his left knee, and after this accident, was prescribed a course of physical therapy, which he failed to complete, to relieve the symptoms.  About five weeks post accident, he returned to his doctor complaining of pain in his knee, as well as low back and foot pain.  An MRI performed on the knee revealed a possible tear of the anterior cruciate ligament.  He was given a support brace, after which his knee pain improved.  The appellate court affirmed the trial court's award of $12,500.00 in general damages.

In Lacomb v. Buras, 778 So.2d 1181 (La.App. 3 Cir. 1/30/01), the plaintiff sustained an injury to her knee in a vehicular collision.  Over the course of ten months, she visited her doctors on five occasions, complaining that her knee bothered her.  She attended physical therapy sporadically, and did not miss any work as a result of her injury.  The appellate court affirmed the trial court's award of $4,000.00 in general damages.  In Ducombs v. Nobel Insurance Company, 884 So.2d 596 (La.App. 4 Cir. 7/21/04), the plaintiff sustained injuries in a vehicular collision that aggravated pre-existing knee and back injuries.  She received a

gash on her left knee. One year after the collision, she complained of pain and swelling in her left knee. She was ultimately diagnosed with degenerative joint disease that was aggravated or made symptomatic by the blow to her knee in the collision. She was treated with injections and needed medication and physical therapy, and probably would need future knee surgery. An MRI confirmed degenerative joint disease. The trial court initially awarded general damages of $19,000.00 for her knee and back injuries, which the court subsequently amended, increasing the award to $27,200.00. The appellate court reinstated the original $19,000.00 award. In <u>Tauzier v. Krauss</u>, 845 So.2d 1208 (La.App. 5 Cir. 4/29/03), the plaintiff was treated with anti-inflammatory medication and physical therapy after a vehicular collision. Approximately one and a half months later, he returned to his doctor complaining of pain and swelling after his knee "popped" while he was running a week earlier. Although he underwent arthroscopic knee surgery to repair the torn medial meniscus, both treating physicians and the court concluded that the torn medial meniscus was a result of the incident that occurred while he was running, and not the collision. The appellate court affirmed the trial court's award of $2,000.00 in general damages.

The Court concludes that Mr. Carmouche is entitled to general damages of $12,000.00 for the aggravation of his pre-existing knee condition, for which he received two months of conservative treatment with prescription medications and physical therapy.

## **CONCLUSION**

Accordingly, judgment will be entered in favor plaintiff and against defendants on plaintiff's claim for damages in the following amounts:

1.  Past medical expenses:           $ 2,840.74
2.  Property damage:                 $   243.00
3.  General damages:                 $12,000.00
4.  Past lost wages:                 $   160.00
    TOTAL                            $15,243.74

Court costs are assessed against the defendants.

New Orleans, Louisiana, June 14, 2006.

_____
MARCEL LIVAUDAIS, JR.
Senior United States District Judge